UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARLO DARIUS BROWN,

                Petitioner,

v.                                        Civil Case No. 15-12346

JACK KOWALSKI[1],                  Honorable Linda V. Parker

                Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION (ECF NO. 1), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

## I. INTRODUCTION

This matter has come before the Court on Petitioner Marlo Darius Brown's *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his state convictions for second-degree home invasion, Mich. Comp. Laws § 750.110a(3), attempted first-degree home invasion, Mich. Comp. Laws § 750.92 and § 750.110a(2), receiving or concealing stolen property valued at $200 or more but less than $1,000, Mich. Comp. Laws § 750.535(3)(b), and third-degree fleeing and eluding a police officer, Mich. Comp. Laws § 257.602a(3). Petitioner alleges as grounds for relief that (1) his right of confrontation was violated when

---

[1] Jack Kowalski has been substituted for Joe Barrett because Petitioner has been moved to Newberry Correctional Facility

certain police officers failed to testify at his trial, (2) trial counsel was ineffective for failing to investigate all relevant witnesses, (3) trial counsel was ineffective for failing to investigate and interview officers Heather Kolke and Jesse Dunlap, (4) the search of his vehicle and person violated his constitutional right not to be subjected to unreasonable searches and seizures, and (5) the Michigan Court of Appeals misapplied the abandonment doctrine when analyzing his Fourth Amendment claim.

Respondent Joe Barrett argues in an answer to the petition that Petitioner procedurally defaulted his first claim and a portion of his claims about trial counsel. Respondent also asserts that the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. The Court agrees that habeas relief is not warranted on any of Petitioner's claims. Accordingly, the Court is denying Petitioner habeas corpus relief.

## II.   BACKGROUND

The Michigan Court of Appeals accurately summarized the facts leading to Petitioner's convictions as follows:

> Defendant's convictions arose from two separate incidents, both of which occurred on January 18, 2011, in Canton, Michigan. In the first incident, someone broke into the home of Dennis Matthews and stole several items, including a new television still in its box. In the second incident, a person broke the glass on the front door of the home of Edward and Veronica Fair, but then ran off. The Fairs, who

were home at the time, called the police, who responded within three to four minutes.

    After responding to the reported break-in at the Fairs' home, the police observed defendant walking in the area. When an officer approached defendant to determine if he had witnessed anything associated with that incident, defendant fled on foot. Defendant eventually entered a vehicle and drove off. A police pursuit ended when defendant lost control of his vehicle and crashed into a tree. Defendant fled from his vehicle on foot and was eventually apprehended and arrested. After defendant was in custody, the police removed his shoes to compare the shoe treads to prints that had been left in the snow at the scenes of both incidents. The police also discovered, in the backseat of defendant's vehicle, a new television, which was still in its box and which matched the type taken from Matthews's home.

*People v. Brown*, No. 304407, 2014 WL 2619395, at *1 (Mich. Ct. App. June 12, 2014) (unpublished).

On April 28, 2011, the jury found Petitioner guilty, as charged, of second-degree home invasion, attempted home invasion in the first degree, receiving and concealing stolen property valued at $200 or more, but less than $1,000, and third-degree fleeing and eluding the police. On May 13, 2011, the trial court sentenced Petitioner to concurrent terms of nine to sixteen years in prison for the second-degree home invasion, one to five years in prison for the attempted first-degree home invasion and for fleeing-and-eluding the police, and two years on probation for receiving or concealing stolen property.

Petitioner moved for a new trial, arguing that: (1) the search of his vehicle and person constituted an unreasonable search and seizure, and trial counsel was

ineffective for failing to seek suppression of the proceeds of the search; and (2) trial counsel was ineffective for failing to challenge testimony that officers were able to match the serial number of the television seized from Petitioner's car to a receipt provided by the alleged victim. The trial court held oral arguments on the motion, but declined to grant an evidentiary hearing. The court denied Petitioner's motion on grounds that the police did not act inappropriately and that a motion to suppress the fruits of the search and seizure would have been frivolous. *See* 3/30/12 Mot. Hr'g; *see also People v. Brown*, No. 11-1104, Order Denying Mot. (Wayne Cty. Cir. Ct. Mar. 30, 2012).

Petitioner raised the same two issues in an appeal as of right. He also moved to remand his case to the trial court for an evidentiary hearing on his claim about trial counsel. The Michigan Court of Appeals granted Petitioner's motion to remand and ordered the trial court to conduct an evidentiary hearing on Petitioner's claim about trial counsel. On remand, the trial court held an evidentiary hearing at which Petitioner's trial attorney testified. *See* 11/30/12 *Ginther* Hr'g Tr. at 4-38.[1] The trial court later ruled that trial counsel's representation did not fall below an objective standard of reasonableness and that the result of the trial would not have

---

[1] "In Michigan, a *Ginther* hearing is an evidentiary hearing regarding a claim of ineffective assistance of counsel. *See People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922, 924 (1973)." *Byrd v. Trombley*, 352 F. App'x 6, 10 n.2 (6th Cir. 2009).

been different were it not for counsel's allegedly poor performance. *See People v. Brown*, No. 11-001104-01, Order Denying Mot. for New Trial (Wayne Cty. Cir. Ct. Dec. 28, 2012).

Following the remand, the Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished *per curiam* opinion. *See Brown*, 2014 WL 2619395.[2] Petitioner appealed to the Michigan Supreme Court, but the State Supreme Court denied leave to appeal on October 28, 2014, because it was not persuaded to review the issues. *See People v. Brown*, 497 Mich. 890, 854 N.W.2d 887 (2014).

On January 5, 2015, Petitioner filed a motion for relief from judgment in which he raised several claims about his right of confrontation, trial and appellate counsel, the trial court's admission of certain evidence at trial, the prosecutor's conduct, the jury, and the prosecution's findings of fact. The trial court denied the motion on grounds that trial counsel was not ineffective, that Petitioner failed to make meritorious arguments, and that Petitioner failed to demonstrate actual prejudice warranting reversal of his convictions. *See People v. Brown*, No. 11-001104-01-FH, Opinion (Wayne Cty. Cir. Ct. April 3, 2015).

---

[2] The Court of Appeals also remanded the case to the trial court so that the trial court could correct the judgment of sentence, which differed from the sentence announced at Petitioner's sentencing and in his appellate brief.

Petitioner apparently failed to appeal the trial court's decision. He did file an application for a delayed appeal from his judgment of sentence, but the Michigan Court of Appeals dismissed the application as untimely. *See People v. Brown*, No. 326965 (Mich. Ct. App. Apr. 21, 2015). Petitioner did not appeal the Court of Appeals' decision to the Michigan Supreme Court. (*See* ECF No. 8-12.)

On June 26, 2015, Petitioner filed this habeas corpus petition. Respondent maintains that Petitioner procedurally defaulted some of his claims. To prevail on procedurally defaulted claims, a petitioner must establish "cause and prejudice for the defaults" and "also show that the claims are meritorious." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). The Court finds it more efficient to go directly to the merits of Petitioner's claims than to analyze whether the claims are procedurally defaulted and whether Petitioner has shown "cause" for the defaults and actual prejudice from the claimed errors. Accordingly, the Court excuses the alleged procedural defaults and "cut[s] to the merits here," as "the cause-and-prejudice analysis adds nothing but complexity to the case." *Id*.

## III. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a

state prisoner's application for the writ of habeas corpus unless the state court's

adjudication of the prisoner's claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal
>         law, as determined by the Supreme Court of the United
>         States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence
>         presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application

must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court

rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and 'demands that state-

court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S.

19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the

state court's decision."  *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*,

541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court,

a state prisoner must show that the state court's ruling on his or her claim "was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

Furthermore, a state court's determination of a factual issue is presumed to be correct unless the petitioner rebuts the presumption of correctness with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1384 (2016). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   ANALYSIS

### A.  Claim One:  Violation of the Confrontation Clause

Petitioner alleges that his right to confront the witnesses against him was violated when two of the police officers who initially responded to the home invasions (Heather Kolke and Jesse Dunlap) failed to testify at his trial.   Petitioner asserts that there was no basis for admitting the seized evidence absent the officers' testimony.

Petitioner first raised this claim in his motion for relief from judgment.  The state trial court rejected the claim because Petitioner had not shown that he would have had a reasonably likely chance of acquittal had all the officers involved in the investigation and apprehension of him testified at trial.

The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases "the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause, however, applies only to testimonial statements. *United States v. Damra*, 621 F.3d 474, 492 n.4 (6th Cir. 2010); *United States v. Reynolds*, 684 F. App'x 510, 514 (6th Cir. 2017).

> It applies to "witnesses" against the accused—in other words, those who "bear testimony." 2 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Ibid*.

*Crawford v. Washington*, 541 U.S. 36, 51 (2004).

At issue here is the failure of Officers Heather Kolke and Jesse Dunlap to testify at Petitioner's trial. Officer Kolke responded to a police dispatch about glass breaking at Mr. and Mrs. Fair's residence, and Officer Dunlap responded to the home invasion at Mr. Matthews' residence. However, no out-of-court statements by Kolke or Dunlap were introduced at Petitioner's trial. Therefore, Petitioner's reliance on the Confrontation Clause is misplaced, and habeas relief is not warranted on his claim.

To the extent Petitioner is arguing that his Sixth Amendment right to compulsory process was violated, that claim also lacks merit. "[T]he Sixth Amendment does not by its terms grant to a criminal defendant the right to secure

the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining witnesses in his favor.' U.S. Const., Amdt. 6." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (emphasis omitted).

Petitioner contends that Officers Kolke and Dunlap would have been favorable to his defense because they could have explained why the police seized the television in his car before Mr. Matthews reported the home invasion at his residence and the theft of his television.  However, Petitioner did not request assistance from the prosecutor in producing Kolke and Dunlap, and he did not object when the prosecuting attorney mentioned that some officers would be unavailable.  (4/27/11 Trial Tr. at 6.)  Petitioner waived or forfeited any right to have Kolke and Dunlap testify at his trial by proceeding with the trial in the witnesses' absence.  *See United States v. Theresius Filippi*, 918 F.2d 244, 246 (1st Cir. 1990) (concluding that the defendant "waived his constitutional right [to compulsory process] when he decided to proceed at trial without his witness"); *Minetos v. Scully*, 625 F. Supp. 815, 818 (S.D.N.Y. 1986) (stating that "[a] defendant is deemed to have waived his right to compulsory process where his counsel fails to move for such process.").  Habeas relief is not warranted on claim one.

**B.  Claims Two and Three:  Ineffective Assistance of Trial Counsel**

Petitioner argues in claims two and three and elsewhere in his petition that his trial attorney was ineffective. Petitioner asserts that his attorney should have (1) filed a motion to suppress evidence seized from him and his vehicle and (2) interviewed all relevant witnesses, including officers Heather Kolke and Jesse Dunlap. The Michigan Court of Appeals concluded on direct review that trial counsel was not ineffective.

## 1. Legal Framework

The "clearly established Federal law" for claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687 (internal citation omitted).

The "deficient performance" prong of this test requires showing "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. A defendant must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. A defendant must demonstrate "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.*
at 694.

### 2. Failure to File a Motion to Suppress Evidence

Petitioner contends that trial counsel was ineffective for failing to move to suppress the proceeds of the officers' search and seizure. Petitioner maintains that there was no probable cause to arrest or even stop him and, therefore, the subsequent searches and seizures of him and his vehicle were unlawful.

The Michigan Court of Appeals determined on review of Petitioner's claim that a motion to suppress evidence seized from Petitioner or his vehicle would have been futile and that counsel was not ineffective for failing to make a futile motion. To prevail on his claim here, Petitioner must show prove (1) that his Fourth Amendment claim is meritorious and (2) there is a reasonable probability that the verdict would have been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In light of this standard, the Court proceeds to analyze Petitioner's Fourth Amendment claim to determine whether trial counsel was ineffective for failing to file a motion to suppress evidence under the Fourth Amendment.

### a. The Initial Stop and Pursuit

Petitioner contends that the police lacked authority to stop him. It is true that "the Fourth Amendment was meant to prevent wholesale intrusions upon the

personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'" *Davis v. Mississippi*, 394 U.S. 721, 726–27 (1969). But

> law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.

*Florida v. Royer*, 460 U.S. 491, 497 (1983). And even though "[t]he person approached . . . need not answer any question put to him" and "may not be detained even momentarily without reasonable, objective grounds for doing so," "certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime." *Id*. at 497-98. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

"[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Moreover, unprovoked flight upon noticing the police and evasive behavior are pertinent factors in determining reasonable suspicion. *Id*. "Headlong flight—

wherever it occurs—is the consummate act of evasion:  It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."  *Id.*

Police Officer Daniel Woodward testified at trial that he went to Mr. and Mrs. Fair's neighborhood following a police dispatch about glass breaking at a residence.  He saw Petitioner walking on the sidewalk about a block away from the Fairs' home.  He rolled down the window of his fully marked police car and informed Petitioner that he wanted to talk to him.  Petitioner then ran away from him.

Officer Woodward admitted at trial that Petitioner was not doing anything suspicious at the time and that he had no description of the perpetrator of the crime at the Fairs' home.  However, Petitioner was the only person in the area, and Woodward's job was to ask questions and locate witnesses and suspects.  He was suspicious of Petitioner because of the nature of the Fairs' call to the police, the timing of their call, and Petitioner's location.  Additionally, Petitioner ran from him, and Officer Woodward testified that most people did not run from him when he approached them to ask questions.  (4/27/11Trial Tr. at 91-94, 101-08, 114-15.)

Officer Woodward had specific and articulable facts to justify the stop and pursuit of Petitioner.  Thus, Petitioner's contention that the police had no authority to stop him lacks merit.

## b.  The Subsequent Arrest

The next question is whether the police had probable cause to arrest

Petitioner without a warrant.   Absent a warrant, an arrest is constitutionally valid

if it is supported by probable cause.  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Probable cause exists if at the moment the arrest is made, "the facts and

circumstances within [the officers'] knowledge and of which they had reasonably

trustworthy information were sufficient to warrant a prudent man in believing that

the petitioner had committed or was committing an offense."  *Id.*

Officer Woodward testified that, after Petitioner ran away from him, he

alerted Officer Kolke[3] that Petitioner might be headed in her direction.  Officer

Kolke, in turn, informed Officer Jim Marinelli that a car was departing Jerry Drive

and turning onto Morton Taylor Road.  (4/27/11 Trial Tr. at 95.)  Officer Marinelli

observed the car go through the intersection of Jerry Drive and Morton Taylor

Road without stopping at the stop sign.  He activated his lights and siren and

pursued the car.  The driver of the suspicious car accelerated, drove through

another stop sign, exceeded the speed limit, and ultimately crashed into a tree.

Petitioner then jumped out of the car and ran between some houses.  Marinelli

pursued Petitioner and detained him.  (*Id.* at 117-22, 125-28.)

---

[3]  The officer's name is spelled "Kopy" in the transcript of trial, but it appears
from the general context of the testimony that Officer Woodward was referring to
Officer Kolke.

The police had probable cause to arrest Petitioner without a warrant because he fled from the police following an accident. This was a violation of Mich. Comp. Laws § 257.602a(3), fleeing and eluding a police officer resulting in a collision or accident. Thus, Petitioner's challenge to his arrest lacks merit.

### c. The Searches and Seizures

The Fourth Amendment ordinarily requires police officers to obtain a warrant before conducting a search. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). The question here is whether the searches of Petitioner and his vehicle and the seizure of items from him and his vehicle were lawful absent a warrant.

### i. The Seizure of Petitioner's Shoes

Petitioner contends that the officers' search of him and seizure of his shoes violated his constitutional right against unreasonable searches and seizures. The shoes were forcibly removed from Petitioner following his arrest. (4/27/11 Trial Tr. at 96-97, 128-29.)

Although the police did not have a warrant to take Petitioner's shoes, "[a]mong the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). "[A] police officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person and the area 'within his immediate control.'" *Davis v. United States*, 564 U.S. 229, 232 (2011) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969); *accord*

*Birchfield v. North Dakota*, 136 S. Ct. 2160, 2174 (2016) (stating that "[t]he

search-incident-to-arrest doctrine has an ancient pedigree" and that "[w]ell before

the Nation's founding, it was recognized that officers carrying out a lawful arrest

had the authority to make a warrantless search of the arrestee's person"); *Illinois v.*

*Lafayette*, 462 U.S. 640, 644 (1983) (noting from previous Supreme Court

decisions that, "immediately upon arrest an officer may lawfully search the person

of an arrestee").

Because Petitioner was lawfully arrested, the police could search him.  It is

questionable, however, whether the police were justified in forcibly removing his

shoes from him at the time.  *See Lafayette*, 462 U.S. at 645 (stating that, "the

interests supporting a search incident to arrest would hardly justify disrobing an

arrestee on the street").

But even if the police acted improperly in forcibly taking Petitioner's shoes

from him while he was confined in the squad car, they could have confiscated his

shoes and clothes shortly afterward when they booked him at the police station.

*See id*. at 646 (stating that, "[a]t the stationhouse, it is entirely proper for police to

remove and list or inventory property found on the person or in the possession of

an arrested person who is to be jailed").   Thus, the shoes with their distinctive

tread marks likely would have been discovered and lawfully seized at the police

station.  "The inevitable discovery doctrine . . . allows unlawfully obtained

evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)).

Furthermore, "[t]he exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant." *Birchfield*, 136 S. Ct. at 2173 (citing *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)). The police removed Petitioner's shoes immediately after his arrest because they wanted to compare the distinctive tread on Petitioner's shoes to the footprints in the snow where Petitioner had run from Officer Woodward. (4/27/11 Trial Tr. at 96-97, 99-101.) It was reasonable for the police to believe that the footprints in the snow would be destroyed if they waited for a judicial officer to issue a warrant to remove Petitioner's shoes. *See* 11/30/12 *Ginther* Hr'g Tr. at 24-25 (trial counsel's testimony at the post-conviction hearing that, because snow melts, there were exigent circumstances justifying the confiscation of Petitioner's footwear without first acquiring a warrant). The possibility that the footprint evidence would be destroyed while awaiting a warrant justified the warrantless seizure of Petitioner's shoes. *United States v. Tyree*, 292 F. App'x 207, 212 (3d Cir. 2008) (citing *United States v. Coles*, 437 F.3d 361, 366 (3d Cir. 2006)).

### ii.  The Search of Petitioner's Car and Seizure of the Box containing the Television

Petitioner contends that the search of his vehicle was unconstitutional because he was in custody when his car was searched.  Petitioner relies on the Supreme Court's decision in *Gant* where the Supreme Court stated that the

> [p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.  When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Gant*, 556 U.S. at 351.

Petitioner had been arrested and placed in a squad car before an officer noticed the box in Petitioner's car.  (4/27/11 Trial Tr. at 122-23, 129.)  Petitioner had no access to his car at the time, and the box containing the television was not evidence of the charged offense (fleeing and eluding the police).  Therefore, under *Gant*, the police could not lawfully search Petitioner's car incident to Petitioner's arrest.

Nevertheless inventory searches of automobiles pursuant to standard police procedures  are reasonable under the Fourth Amendment, *South Dakota v. Opperman,* 428 U.S. 364, 372 (1976), and are "a well-defined exception to the warrant requirement."  *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (citing *Lafayette,* 462 U.S. at 643, and *Opperman*, 428 U.S. 367-76).  In other words,

"[t]he policies behind the warrant requirement are not implicated in an inventory search, *Opperman*, 428 U.S. at 370, n.5, nor is the related concept of probable cause." *Id.* Police officers may even "open closed containers while conducting a routine inventory search of an impounded vehicle." *Id.* at 376 (Blackmun, J., concurring).

Moreover, the inevitable discovery doctrine "applies where the facts indicate that the officers inevitably would have discovered and seized the tainted evidence by following 'routine procedures.'" *United States v. Garcia*, 496 F.3d 495, 506 (6th Cir. 2007) (quoting *United States v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003)). "Proof that contraband would have been detected in 'an inventory search that would inevitably follow seizure of a car' is sufficient to invoke the inevitable discovery exception to the exclusionary rule." *United States v. Kimes*, 246 F.3d 800, 804 (6th Cir. 2001) (citing *Kennedy*, 61 F.3d at 498).

Following a police chase, Petitioner crashed into a tree and fled from the police. He was arrested for a valid reason (fleeing and eluding the police), and he was suspected of being involved in the incident at the Fairs' residence. Officer Kolke noticed the box with the television in the backseat of Petitioner's car and then transported the car from the crash site to the police department where it likely would have been subjected to an inventory search without a warrant. There is also a substantial possibility that Officer Kolke eventually would have discovered the

link between the television and the home invasion at Mr. Matthews' home, because she became aware of the home invasion at Mr. Matthew's home while she was writing her report about the attempted home invasion at the Fairs' resident. (*See*, ECF No. 1-1 at Pg ID 79.) Therefore, defense counsel had no basis for challenging the search of Petitioner's car and the comparison of the television in the car with Mr. Matthews' sales receipt. The search and seizure were proper under exceptions to the Fourth Amendment for inventory searches and inevitable discoveries.

The Court concludes for the reasons given above that Petitioner's Fourth Amendment claim lacks merit. The police had articulable reasons to stop and pursue Petitioner. Soon afterward, they had probable cause to arrest him, and the subsequent searches and seizures were proper. Therefore, a motion to suppress evidence found during the search and seizure of Petitioner and his car would have been futile. "[F]ailing to make a futile motion is neither unreasonable nor prejudicial." *Jacobs v. Sherman*, 301 F. App'x 463, 470 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 687). It follows that trial counsel was not ineffective for failing to move to suppress the evidence found during the police officers' searches and seizures.

### 3. Failure to Investigate and Interview

Petitioner alleges that his trial attorney was ineffective for failing to investigate and interview all relevant witnesses, including Officers Kolke and Dunlap.

Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This duty includes the obligation to investigate all witnesses who may have information concerning [a] client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). An attorney's "failure to conduct a reasonable investigation into . . . 'a known and potentially important witness' violate[s] [a defendant's] Sixth Amendment right to the effective assistance of counsel." *Id*. at 259 (quoting *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987)). But "[a] defense counsel has no obligation to . . . interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quoting *Millender v. Adams*, 187 F. Supp. 2d 852, 877 (E.D. Mich. 2002) (citing *Marra v. Larkins*, 111 F. Supp. 2d 575, 585 n.13 (E.D. Pa. 2000)).

### a. Failure to Question the Search

Petitioner contends that, if defense counsel had investigated the facts and interviewed Officer Kolke, he could have challenged Kolke's search of his car and

inspection of the television on the ground that she lacked probable cause to search the vehicle at the time.  Petitioner notes that Officer Kolke transported the car to the police department, found the television in the backseat of the car, and *subsequently* learned that the television was taken during the home invasion at Mr. Matthews' residence.

The record supports Petitioner's contention that Officer Kolke seized Petitioner's car and located the television in the backseat of the car *before* she became aware of the home invasion and theft at Mr. Matthews' home.  (*See* ECF No. 1-1 at Pg ID 79.)  However, the television would have been compared to Mr. Matthews' missing television shortly afterward when Mr. Matthews reported the theft of a television from his home and gave his receipt for the television to police officers.  Therefore, Petitioner was not prejudiced by defense counsel's failure to interview Officer Kolke and question her regarding her alleged lack of probable cause to search his vehicle.

### b.  Failure to Investigate Serial Numbers

Petitioner contends that defense counsel also was ineffective for failing to investigate and discover that the police merely compared the product number on the box containing the television with the product number on Mr. Matthews' receipt for the television.  According to Petitioner, the product number is not unique to an item in the same way that a serial number is, and if defense counsel

23

had realized this, he could have argued that the television in Petitioner's car was not necessarily the television taken from Mr. Matthews' home.

Police officer Aaron Mickey testified at trial that the serial number on the box of the television found in Petitioner's car matched the serial number on Mr. Matthews' receipt for the television taken from his home. (4/27/11 Trial Tr. at 137-38.) Although, it was established at the *Ginther* hearing in state court that the receipt did not contain a serial number; it merely listed a product number. Further, trial counsel testified at the hearing that he did not know the difference between a part or product number and a serial number. (11/30/12 *Ginther* Hr'g Tr. at 13-14.) He also stated that he had assumed from the police investigator's report that the number on the television box matched Mr. Matthews' receipt. (*Id*. at 11-12.) He could not imagine that the police or Mr. Matthews would lie about the numbers being an exact match. (*Id*. at 19.)

Defense counsel's failure to recognize that there was no serial number on Mr. Matthews' receipt or on the box for the television was significant because, according to Petitioner, serial numbers are unique to a product, whereas a product or part number applies to all similar products. (*Id*. at 16-17.) The Michigan Court of Appeals, therefore, determined on review of Petitioner's claim that it was objectively unreasonable for defense counsel not to carefully examine Mr.

Matthews' receipt or to determine what the numbers on the receipt meant. *Brown*, 2014 WL 2619395, at \*4.

The Court of Appeals nevertheless concluded that counsel's deficient performance did not prejudice the defense, because clarifying the police officer's testimony at trial would not have significantly weakened the probative value of the evidence linking Petitioner to the home invasion at Mr. Matthews' residence. In reaching this conclusion, the Court of Appeals noted:

> The fact that defendant was in possession of a new television of the same model as the new television taken from Matthews's home would have still been strong circumstantial evidence linking defendant to the home invasion at Matthews's residence. Other evidence, including footprints in the snow at Matthews's home that matched defendant's shoes, also linked defendant to that offense. In addition, the testimony indicated that defendant gave inconsistent accounts concerning where he allegedly obtained the television that was found in his car.

*Id.* The Court of Appeals concluded from this evidence that the result of the trial in all likelihood would not have been different if defense counsel had clarified the matter at trial and, therefore, Petitioner had failed to establish that his attorney was ineffective.

This Court concludes for the same reasons that defense counsel's alleged failure to investigate and interview witnesses about the numbers on the box for the television and on Mr. Matthews' receipt did not prejudice the defense. Therefore, Petitioner has not satisfied the *Strickland* test, and he is not entitled to relief on his claim.

### C. Claim Four: Violation of the Right not to be Subjected to Unreasonable Searches and Seizures

Petitioner alleges next that the police officers' search and seizure of his vehicle and person violated his constitutional right not to be subjected to unreasonable searches and seizures. Petitioner contends that the police lacked probable cause to stop and arrest him.

The Fourth Amendment guarantees people the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." However, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (internal footnote omitted).

"This prohibition on federal habeas review of exclusionary rule claims applies only to prisoners who received 'the opportunity for 'full and fair consideration' of their claims in state court." *Good v. Berghuis*, 729 F.3d 636, 637-38 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 1174 (2015). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Id.* at 639.

"Michigan provide[s] an adequate avenue to raise a Fourth Amendment claim," and Petitioner has not shown "that his claim was frustrated by a failure in Michigan's Fourth-Amendment-review mechanism." *Hurick v. Woods*, 672 F. App'x 520, 535 (6th Cir. 2016), *cert.denied*, 138 S. Ct. 96 (2017). In fact, he raised his Fourth Amendment arguments in the trial court, in the Michigan Court of Appeals, and in the Michigan Supreme Court. This Court, therefore, is not required to review Petitioner's challenge to the search and seizure of his vehicle and person. The Fourth Amendment claim lacks merit, in any event, for the reasons given above in the discussion of Petitioner's claim about trial counsel.

### D. Claim Five: Error in Applying the Abandonment Principle

In his fifth and final claim, Petitioner alleges that the state courts improperly applied the abandonment principle when reviewing his claim that the police improperly searched his car. The Michigan Court of Appeals stated that Petitioner abandoned his vehicle after crashing it and, therefore, he had no basis for challenging the search of his vehicle.

There was some basis for the state court's conclusion, because Petitioner exited his car and ran from the police after he crashed into a tree. Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have recognized an exception to the warrant requirement where a suspect abandons the property in question. *See Abel v. United States*, 362 U.S. 217, 240-41 (1960)

(concluding that FBI agents acted lawfully in seizing items without a warrant where the petitioner abandoned the items by throwing them in a wastepaper basket in a hotel room which he vacated); *see also United States v. Jones*, 406 F. App'x 953, 954 (6th Cir. 2011) (stating that the "[s]earch and seizure of abandoned property does not violate the Fourth Amendment"); *accord United States v. Labelle*, 390 F. App'x 539, 541 (6th Cir. 2010)( stating that "[a] defendant forfeits any legitimate expectation of privacy he might have in a property when he abandons that property"); *United States v. Eden*, 190 F. App'x 416, 421 (6th Cir. 2006) (stating that "neither a warrant nor probable cause is required to seize and search property that has been abandoned"); *United States v. McClendon*, 86 F. App'x 92, 94 (6th Cir. 2004) ("A warrantless search of abandoned property does not violate the Fourth Amendment's proscription against unreasonable searches.").

Even if the Michigan Court of Appeals incorrectly applied the abandonment doctrine to Petitioner's case, the Court of Appeals reasonably concluded for other reasons that the search of Petitioner's car was proper and that a motion to suppress evidence found in the car would have been futile. Therefore, Petitioner's challenge to the Court of Appeals application of the abandonment theory is not a basis for habeas relief.

## V.     CONCLUSION

For the reasons given above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts.  The state court decisions also were "not so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

## VI.     CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

Reasonable jurists could not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.

The Court, therefore, declines to issue a certificate of appealability.  Nevertheless, because an appeal could be taken in good faith, Petitioner may proceed in forma pauperis on appeal if he appeals this decision.

For the reasons given above,

**IT IS ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma pauperis on appeal.

**IT IS FURTHER ORDERED** that Petitioner motion for substitution of warden is **GRANTED**, and Jack Kowalski is substituted for Joe Barrett.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: June 12, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, June 12, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager